## JONES et al. v. COMMAGERE et al.

### No. 16950.

Court of Appeal of Louisiana. Orleans.

May 16, 1938.

Brian & Brian, of New Orleans, for appellants.

Arthur B. Leopold, of New Orleans, for appellees.

WESTERFIELD, Judge.

On the 9th day of March, 1932, the Misses Gladys and Mina Irma Jones, obtained a judgment against Louis E. Commagere, Jr., in the sum of $1,451.12 with 8 per cent. interest from May 1, 1929, and 20 per cent. additional as attorney's fees plus costs of court. Several attempts were made to execute the judgment without success. Finally, on January 7, 1938, by garnishment under fieri facias the Commagere Pharmacy, Inc., was made garnishee. In answer to the interrogatories the garnishee denied that it was indebted to the defendant Commagere in any sum and averred that on the contrary Commagere was indebted to it in the sum of $945.21. A rule was taken to traverse the answers of the garnishee and dismissed by judgment dated February 4, 1938. From this judgment plaintiffs have appealed.

The Commagere Pharmacy, Inc., was organized with a capital stock of $15,000, of which the judgment debtor, Louis E. Commagere, Jr., owned 147 shares and his father, his wife, and his sister one share each. The capital stock was subsequently reduced from $15,000 to $5,000. It does not appear that the old stock issue had been recalled and a new issue distributed in accordance with the amended capital stock, but that fact is unimportant. According to the records of the corporation, Commagere's salary was $60 per month and his wife, Mrs. Anna Commagere, received $85 per month. The withdrawals of Commagere and his wife from May through December, 1937, totaled $1314.08, made up as follows:

| | | | |
|---|---|---|---|
| May | $125.36 | September | $209.92 |
| June | 136.82 | October | 209.85 |
| July | 165.21 | November | 170.18 |
| August | 175.98 | December | 120.76 |

Commagere's account showed a debit balance on May 1, 1937, of $791.13, which, added to the total withdrawals from that day until December, equaled $2,105.21. From this sum was deducted the total of the two salaries due Commagere and his wife for that period, or $1,160. This left a net indebtedness due by Commagere to the corporation of $945.21. It appears that the salaries of Commagere and his wife were not paid in a lump sum, monthly, semimonthly, or weekly, but by indiscriminate withdrawals of small sums in cash and by the payment of their personal bills by the corporation.

The judgment creditors, plaintiffs in rule, contend that the corporation is but the alter ego of Commagere and that the alleged indebtedness is fictitious and fraudulent and the result of a conspiracy between the judgment debtor and the stockholding members of his family in order to escape the payment of the judgment due plaintiffs in rule.

Concerning the validity of this indebtedness we have grave doubt. Commagere's father, who was the vice president, testified that he knew nothing about it and no arrangement for the settlement of the alleged indebtedness was attempted by the corporation or by Commagere. Commagere's stock was pledged to his father. It does appear, however, that Mrs. Commagere was a competent druggist and that the salary credited to her account was reasonable. We are convinced that there was no intention to consider Commagere's withdrawals in excess of his stated salary of $60 per month as an indebtedness due the corporation and that the corporation was run in the interest of Commagere, Jr., with the idea that he would receive as compensation whatever might be safely withdrawn from its earnings. It was practically an incorporation of Commagere's earning capacity. It follows that the authorized salary of $60 does not represent his earnings or compensation received from the corporation. He drew a total of $1,314.08, or an average of $165.51 per month, from May to December, 1937. Treating this average as the real salary of himself and wife and deducting Mrs. Commagere's salary, we have $80.51 as the compensation paid Commagere.

Act No. 183 of 1932 provides that 80 per cent. of the earnings of "laborers, wage earners, * * * secretaries, bookkeepers, clerks, employees on a commission basis, or employees of any nature or kind whatever, whether skilled or unskilled" shall be exempt from seizure and that as to the remaining 20 per cent. "in no case shall the seizure or garnishment infringe upon a minimum of Sixty ($60.00) Dollars per month of such salary, wage, commission or other compensation, which said Sixty ($60.-00) Dollars per month shall always be exempt."

Act No. 181 of 1932 establishes the procedure by which the nonexempt portion of salaries, wages, commissions, or other compensation of employees may be seized and garnished. In section 3 of the act, it is provided that only one writ of garnishment or one set of interrogatories need be served on the garnishee and that the court shall render judgment for monthly, semimonthly, weekly, or daily payments to be made to the seizing creditor "according to the manner best suited to the circumstances, until the indebtedness is paid" and that "the court shall retain jurisdiction to amend or set aside its judgment at any time in its discretion." In section 5 the act declares that in the event an employer, in answer to interrogatories, should plead that the employee is indebted to it, the employer shall make "a full and complete disclosure of the status of such account, showing the time that the debt was incurred, the exact amount of such debt, the credits applicable thereto, the manner in which said debt is being liquidated, and all other facts in connection therewith and pertinent thereto, whereupon the court may hear evidence affecting such issue and may render a judgment ordering the payment to said employer of the non-exempt portion of such salary, wage or commission at a specified rate in the same manner as if the said employer were a judgment creditor having a prior garnishment * * *."

In the case before us, the employer, though contending that there was the sum of $945.21 due it, makes no attempt to establish its alleged claim in conformity with the cited provisions of the act of 1932. There is no method of settlement or liquidation of its claim alleged or proven, and it is made to rest solely upon the allegation that Commagere had overdrawn his $60 salary to the extent of the claim but, as we have heretofore stated, Commagere was not limited to the $60 as provided by the minutes of the corporation, and we, therefore, find that his compensation, which we have averaged upon a basis of the figures presented covering eight months of operation,

was $80.51 monthly. If Commagere's earnings should increase or diminish in the future, proper allowance can be made for the altered situation by a showing to that effect to the court below which retains jurisdiction of the case for that purpose under the specific direction of Act No. 181 of 1932.

Under Act No. 183 of 1932, 80 per cent., or $64.41, of the $80.51 which Commagere receives monthly, is exempt from seizure, leaving a balance of $16.10 a month subject to the satisfaction of the claim of the seizing creditor.

For the reasons assigned the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of Misses Gladys and Mina Irma Jones, and against the Commagere Pharmacy, Inc., ordering the Commagere Pharmacy, Inc., to pay to the Misses Gladys and Mina Irma Jones the sum of $16.51 monthly in satisfaction of their judgment dated March 9, 1932, in the sum of $1,451.12; the payments to be retroactive as of the 1st day of February, 1938, and to continue until the judgment shall have been satisfied or until further orders of the court.

Judgment reversed.